IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal Action No. 07-143-JJF |
| Plaintiff, : | |
| v. : | |
| : | |
| CHARLES WARREN, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S REQUEST TO DENY
### THE DEFENDANT'S MOTION TO SUPPRESS
### AND MOTION TO DISMISS INDICTMENT

The United States, by and through Colm F. Connolly, United State's Attorney for the District of Delaware, and Shawn E. Martyniak, Special Assistant United State's Attorney for the District of Delaware, hereby requests the Court to deny the Defendant's *Motion to Suppress Physical Evidence and Statements* and *Motion to Dismiss Indictment*.

### I. FACTUAL ALLEGATIONS.

The Government submits the following factual allegations:

1. On November 11, 2007, at approximately 1:40 a.m., Wilmington Police Officer Rinehart was on patrol in the area of the 1300 block of East 28th Street in Wilmington, Delaware in a fully marked police vehicle.

2. During that patrol, Officer Rinehart observed a black male, later identified as Charles Warren (herein "defendant"), riding a bicycle without a headlight. Officer Rinehart recognized this act to be a violation of the *Delaware Motor Vehicle Code*.

3. Due to the traffic code infraction, Officer Rinehart attempted to stop the defendant. The defendant ignored the Officer's commands and continued to ride away from Officer

Rinehart.

4. The defendant rode across North Claymont Street and then rode south on Northeast Boulevard. A second patrol vehicle attempted to stop the defendant. The second patrol vehicle was occupied by Wilmington Police Officers Murphy and Steele.

5. Officers Murphy and Steele attempted to stop the defendant in the 2700 block of Northeast Boulevard. The defendant attempted to evade the officers by riding up across the median, but Officer Rinehart blocked that avenue of escape. The defendant fell off of the bicycle and fled on foot.

6. Officer Rinehart was able to make contact with the defendant at 28th Street and Northeast Boulevard. A struggle ensued and Officer Steele was forced to deploy his Taser.

7. The defendant was taken into custody. A search of the defendant was conducted. In the defendant's right front pocket, Officers located a silver Rossi Inter-Arms .38 Special revolver. The firearm was loaded with five (5) rounds. An additional round was located in the defendant's pocket.

8. The Officers asked the defendant his identity. The defendant replied that his name was "John Wisc" and gave a date of birth of 08/26/2004. The defendant was then transported to the Wilmington Hospital Emergency room for treatment. The bicycle was left behind.

9. While at Wilmington Hospital, the defendant revealed his true identity to Officer Steele. The Officers ran a DELJIS check and determined that the defendant was on Level III probation in the State of Delaware.

10. As a result of the defendant's probation status and his current arrest, the Officers contacted Delaware Probation and Parole. Probation Officer Cerminaro contacted his supervisor

and received approval to conduct an administrative search the defendant's home.

11. Officer Cerminaro conducted the search of the defendant's residence. Officer Cerminaro focused on the bedroom he believed to be the defendant's. During the search, Officer Cerminaro located two bags of cocaine base. Each bag weighed approximately 14 grams each totaling approximately 28 grams of cocaine base. Samples from both bags field-tested positive for the presence of cocaine. Officer Cerminaro also recovered additional empty baggies from the room. Those bags are commonly used to package illegal narcotics.

12. As a result, the defendant was indicted for possession with intent to deliver in excess of five grams of cocaine base, in violation of Title 21, U.S.C. §§ 841(a)(1) and (b)(1)(B) and for being a felon in possession of a firearm, in violation of Title 18 U.S.C. § 922(g).

13. The defendant filed both his *Motion to Suppress Physical Evidence and Statements* and his *Motion to Dismiss Indictment* on December 17, 2007. Please consider this the Government's pre-hearing response.

## I. LEGAL ARGUMENT.

### A. Police had reasonable articulable suspicion to stop the defendant.

The defendant's *Motion to Suppress* should be denied as the police Officers had reasonable articulable suspicion to stop the defendant. Officer Rinehart stopped the defendant after he saw him riding at night without a headlight, a violation of the *Delaware Motor Vehicle Code*.[1]

The Fourth Amendment allows police to "conduct a brief, investigatory stop when the

---

[1] This information was taken from the Initial Crime Report written by Officer Rinehart. A copy of this report was provided to the defendant in discovery.

3

officer has reasonable articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Delaware law states, "(a) Every bicycle when in use at nighttime shall be equipped with a lamp on the front which shall emit a white light visible from a distance of at least 500 feet to the front." 21 *Del. C.* § 4198F(a).

In this instance, Officer Rinehart saw a violation of the *Delaware Motor Vehicle Code* being committed by the defendant. The Officer attempted to stop the defendant. Clearly, the Officer had not only reasonable articulable suspicion to belief that the defendant was engaged in criminal activity, but probable cause to stop the defendant.

The defendant then fled from Officer Rinehart. This created the second offense of Resisting Arrest. Under the *Delaware Criminal Code*, a person is guilty of resisting arrest when the person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention of the person or another person or intentionally flees from a peace officer who is effecting an arrest. 11 *Del C.* § 1257(b). By the time the officers took the defendant into custody, they had probable cause to arrest the defendant for two separate violations of the law.

B. The Administrative Search by a Probation Officer was justified.

The subsequent search of the defendant's home was pursuant to a valid administrative search conducted by probation officers. Generally, a warrant is required to conduct the search an individual's home; however, when a probationer is involved, the probationer's "reasonable expectation of privacy is decreased and the government's reasonable need to monitor behavior is increased." *United States v. Knights*, 534 U.S. 112, 119 (2001); *see also Griffin v. Wisconsin*, 483 U.S. 868, 871-72 (1987). As a result, "no more than reasonable suspicion" is required to

4

justify a search in these circumstances. *Knights*, 534 U.S. at 521. To decide whether "reasonable suspicion exists, we consider the totality of circumstances to determine whether the "officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Williams*, 417 F.3d 373, 376 (2005); *citing United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotations omitted). In *Griffin v. Wisconsin*, the Supreme Court reasoned that probation officers have a "special need" to supervise probationers, apart from a normal law enforcement need, that justifies a departure from the normal probable cause requirements. *Griffin*, 483 U.S. 868, 873-74. Probationers, the Court wrote, do not enjoy the same liberties that ordinary citizens enjoy. *Id.* at 874.

In this case, there is no doubt that the defendant was in violation of his probation. The defendant is a Level III probationer; his presence on a street at 1:40 a.m. is itself a violation of his probationary terms. He resisted the Officer's attempt to lawfully detain him, he was found with a firearm, and he gave the Officers a false identity. Clearly, the defendant was in violation of his probation and his conduct with the Police Officers gave the Probation Officer reason to suspect legal wrongdoing by the defendant.

### C. The Defendant has failed to meet his burden required for dismissal.

In his *Motion to Dismiss Indictment*, the defendant argues that the indictment against him should be dismissed because the officers failed to preserve exculpatory evidence. The defendant claims that by failing to seize the defendant's bicycle, the police violated his due process rights. The defendant has failed to meet the burden required by the Court to grant such a motion.

5

### 1. There was no exculpatory evidence that was not gathered.

In *California v. Trombetta*, the United States Supreme Court held that the government violates a defendant's due process rights when it fails to preserve evidence that would likely play a significant role in his defense. *Trombetta*, 467 U.S. 479, 489 (1984). The Court determined that to meet the standard required that "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Id.*

In the case at bar, the defendant cannot meet such a burden. There is no apparent exculpatory value to the evidence. Black's Law Dictionary defines "exculpatory" as, "Clearing or tending to clear from alleged fault or guilt." *Black's* 508 (8th ed. 2004). The bicycle does not exculpate the defendant from any indicted crime. Perhaps it could be argued that the bicycle is exculpatory if addressing a violation of the *Delaware Motor Vehicle Code,* but there is no indicted vehicle infraction. The bicycle, no matter its condition, is not exculpatory when addressing the indicted charges of "Possession of a firearm by a prohibited person" or "Possession with intent to deliver cocaine base."

### 2. There was no "bad faith" by the Police Officers.

The Supreme Court, in *Arizona v. Youngblood*, clarified the test established in *Trombetta*. In *Youngblood*, the Court determined that a defendant must show bad faith on the part of the police who failed to preserve the potentially useful evidence. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Mere negligence on the part of the police, without any showing of bad faith, does

not support a due process violation. *Id.* The Third Circuit followed this reasoning writing, "...in order to make out a due process claim arising out of the loss or destruction of evidence, the defendant must prove that the government destroyed or failed to preserve the evidence in bad faith." *United States v. Gonzales*, 1995 WL 785097 at 1 (D. Del. 1995). The Court continued, "The presence or absence of bad faith turns on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. *Id.*

Even if the Court were to assume that the evidence met the requirements of *Trombetta*, the police did not act in bad faith. First, the police's knowledge at the time was that the bicycle did not have a light on it. There was no reason for the Officers to believe it would tend to "clear or tend to clear" the defendant from guilt. Additionally, even if we assume the police should have taken the bike as evidence, the Officers would be negligent, not in acting bad faith, in failing to keep it as evidence.

### 3. The case law is not applicable to the defendant's position.

Finally, the Government submits that perhaps *Trombetta* and its progeny do not even apply to this situation. *Trombetta* dealt with a police officer's failure to preserve the defendant's breath sample used in an intoxilyzer test. *Trombetta*, 467 U.S. at 479. *Youngblood* dealt with the failure of police to refrigerate a rape victim's clothing and semen samples taken from the victim. *Youngblood*, 488 U.S. at 59. In *United States v. Deaner*, the Third Circuit ruled that the police did not act in bad faith in destroying marijuana prior to the defendant's sentencing. *Deaner*, 1 F.3d 192 (3d Cir. 1993). In *Gonzales*, the Third Circuit determined that there was no bad faith by officers when wire cutters that were taken as evidence were lost. The wire cutters

were subjected to tests by the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The cutters were then used in a State Court trial. The wire cutters were lost sometime after the State trial, but prior to any action within the Federal Court. *Gonzales*, 1995 WL 785097 at 1.

In *Trombetta* the police did not retain a scientific sample. In *Youngblood*, the officers failed to refrigerate clothing and fluid samples. In *Deaner*, the prosecution destroyed the evidence. In *Gonzales*, the Officers gathered evidence, but the gathered evidence was subsequently lost. In the case at bar, the officers did not do anything with the bike; it was never in their custody. Simply put, *Trombetta*, and its related cases, do not apply to the factual scenario before the Court.

### III. CONCLUSION.

The Government respectfully submits that the defendant's motions should be denied. In relation to the Defendant's *Motion to Suppress Physical Evidence and Statements*, the Police had more than reasonable, articulable suspicion to stop the defendant.

Regarding the *Motion to Dismiss Indictment*, there are several reasons the motion should be denied. First, the uncollected bicycle is not exculpatory as to either "Possession with intent to deliver cocaine" or "Possession of a firearm by a prohibited person." Secondly, even if it were, the defendant cannot show bad faith on the part of the officers in failing to take the bicycle as evidence. Finally, the Government submits that the cases cited by the defendant do not support his position as the police never had the bicycle in their custody and they did not do anything with the bicycle.

WHEREFORE, the United States respectfully asks the Court to deny each of the defendant's motions or, in the alternative, consider this the Government's pre-hearing response to the defendant's motions.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By: /s/ Shawn Martyniak
Shawn E. Martyniak (De. I.D. No. 4433)
Special Assistant United States Attorney
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, Delaware 19899-2046

Dated: February 1, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 07-143-JJF |
| | ) | |
| CHARLES WARREN, | ) | |
|     Defendant. | ) | |

**ORDER**

For the reasons stated in the Government's Motion dated February 1, 2008, **IT IS**

**HEREBY ORDERED** that:

1. The defendant's *Motion to Suppress Physical Evidence and Statements* is **DENIED**.
2. The defendant's *Motion to Dismiss Indictment* is **DENIED**.

Dated: _____          _____
                                              Joseph J. Farnan
                                              UNITED STATES DISTRICT JUDGE