IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : Criminal Action No. 07-143-JJF |
| Plaintiff, | : |
| v. | : |
| | : |
| CHARLES WARREN, | : |
| | : |
| Defendant. | : |

### GOVERNMENT'S REQUEST TO DENY
### THE DEFENDANT'S MOTION TO SUPPRESS
### AND MOTION TO DISMISS INDICTMENT

The United States, by and through Colm F. Connolly, United State's Attorney for the District of Delaware, and Shawn E. Martyniak, Special Assistant United State's Attorney for the District of Delaware, hereby requests the Court to deny the Defendant's *Motion to Suppress Physical Evidence and Statements* as well as his *Motion to Dismiss Indictment*.

### I. INTRODUCTION.

On November 6, 2007, the Grand Jury for the District of Delaware indicted Mr. Warren for knowingly possessing with the intent to distribute more than five grams of a mixture containing a detectable amount of cocaine base, in violation of Title 21, *United States Code*, Sections 841(a)(1) and (b)(1)(B); he was also indicted for the charge of knowingly possession a firearm that has been transported in interstate commerce to Delaware, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

On December 17, 2007, the defendant filed two motions: 1) a *Motion to Suppress Physical Evidence and Statements*; and 2) a *Motion to Dismiss Indictment*. The Government filed a pre-hearing response on February 1, 2008. On February 6, 2008, the Court conducted an

evidentiary hearing to take testimony relating to the defendant's motions.

The Government's argument is essentially the same as in its previous *Motion*. In response to the defendant's *Motion to Suppress*, the Government argues that the Police had reasonable, articulable suspicion to stop the defendant for a violation of Delaware law and the subsequent search of the defendant's home was pursuant to a valid administrative search due to the defendant's probationary status. In response to the defendant's *Motion to Dismiss Indictment*, the Government's argument is three-fold: first, there was no evidence of exculpatory value that the officers failed to preserve; second, the defendant had failed to show any "bad-faith" by the police officers; and, finally, the police did not lose or misplace any evidence.

## II. FACTUAL ALLEGATIONS.[1]

On November 11, 2007, at approximately 1:40 a.m., Wilmington Police Officer Rinehart was on patrol in the area of the 1300 block of East 28th Street in Wilmington, Delaware in a fully marked police vehicle. During that patrol, Officer Rinehart observed a black male, later identified as Charles Warren (herein "defendant"), riding a bicycle without a headlight. Officer Rinehart recognized this act to be a violation of the *Delaware Motor Vehicle Code*.

Due to the traffic code infraction, Officer Rinehart attempted to stop the defendant. The defendant ignored the Officer's commands and continued to ride away from Officer Rinehart. The defendant rode across North Claymont Street and then rode south on Northeast Boulevard. Officers Murphy and Steel, operating a second patrol vehicle, attempted to stop the defendant in the 2700 block of Northeast Boulevard. The defendant attempted to evade the officers by riding up across a median on Northeast Boulevard, but Officer Rinehart blocked that avenue of escape.

---

[1] The facts in this section are taken from relevant police reports.

The defendant fell off of the bicycle and fled on foot. Officer Murphy was able to make contact with the defendant at 28th Street and Northeast Boulevard. A struggle ensued and Officer Steele was forced to deploy his Taser.

The defendant was taken into custody. During a search of the defendant a .38 Special revolver was found in the defendant's right front pocket. The firearm was found to be a Rossi Inter-Arms .38 Special revolver loaded with five rounds. An additional round was located in the defendant's front pocket. When Officers inquired as to the defendant's identity, the defendant responded that his name was "John Wisc." The defendant was then transported to the Wilmington Hospital Emergency room for observation due to the police use of a Taser. The defendant's bicycle was left behind.

While at Wilmington Hospital, the defendant revealed Officer Steele that his name was Charles Warren and not "John Wisc." An Officer ran an identification check on the State's computer system and determined that the defendant was a Level III probationer in the State of Delaware. As a result of the defendant's current arrest and his probation status, the Officers contacted Delaware Probation and Parole. Probation Officer Cerminaro contacted his a senior probation officer and received approval to conduct an administrative search the defendant's home.

Officer Cerminaro conducted the search of the defendant's residence. Officer Cerminaro focused on the bedroom he believed to be the defendant's. During the search, Officer Cerminaro located two bags of cocaine base. Each bag weighed approximately 14 grams each totaling approximately 28 grams of cocaine base. Samples from both bags field-tested positive for the presence of cocaine. Officer Cerminaro also recovered additional empty baggies from the room;

those bags are commonly used to package illegal narcotics.

### III. HEARING TESTIMONY.

#### A. Wilmington Police Officers Steele and Murphy.

Officer Steele, a two and a half year police veteran (T-4), testified that he and his partner, Officer Murphy were working the midnight shift on October 11, 2007. (T-5). Officer Steele and Murphy received a radio call from fellow Wilmington Police Officer Rinehart, at approximately 1:38 a.m., regarding an individual that was fleeing from him. (T-6). Officer Rinehart also provided information that the individual was operating a bicycle that did not have a headlight. (T-16). In response to Officer Rinehart's radio call, Steele and Murphy headed towards the 2800 block of Northeast Boulevard, Wilmington, Delaware. (T-8).

Upon arriving at the intersection of 28th Street and Claymont Street, one block from 2800 Northeast Boulevard, Officer Steele first noticed the defendant (T-7). Officer Steele noticed that the defendant was traveling southbound in the northbound lane. (T-7). Both Officer Steele and Officer Murphy noticed that the defendant was operating his bicycle without a head-light as required by the *Delaware Motor Vehicle Code*. (T-8, 18, 26, 28).

Officer Steele advised the defendant to stop, but he continued to flee southbound. (T-8). The Officers followed him to the area of 27th Street and Northeast Boulevard where the defendant dropped his bicycle and fled on foot. (T-8). At that point, Officers Steele and Murphy exited their police vehicle and chased the defendant on foot. (T-9).

Officer Murphy was the first to catch the defendant; the Officer tackled the defendant. (T-10). As Officer Murphy tackled the defendant, the defendant rolled to his back and began to reach for his waist-band. (T-10). In response, Officer Steele tasered the defendant. (T-10). The

4

defendant reached for his waist-band again and was tasered a second time. (T-10). The officers were then able to take the defendant into custody. (T-11).

The officers conducted a pat-down of the defendant and discovered .38 caliber Rossi Inter-Arms handgun. (T-11). An additional .38 special round was found in the defendant's pocket. (T-12). The defendant gave his identity as "John Wisc." (T-12). As a precautionary measure, the defendant was then taken to Wilmington Hospital because he was Tasered. (T-13). While at the hospital, the defendant revealed his name was actually Charles Warren. (T-12).

After the defendant was checked at the Wilmington Hospital, he was taken to the Wilmington Police Station. (T-13). After the defendant was taken to the police station, the officers responded back to the scene to recover the bicycle. (T-14, 29). The bicycle was not located. (T-14).

### B. Probation Officer Cerminaro.

A search of the State's computer information system revealed that the defendant was assigned to Level III probation. (T-14). After the defendant's probationary status was discovered, Officer Cerminaro of Probation and Parole was contacted. (T-30). Officer Cerminaro was advised of the defendant's arrest and the circumstances surrounding the arrest. (T-33). Officer Cerminaro was able to determine that the defendant was in violation of several terms of his probationary status. (T-33).

Officer Cerminaro decided to conduct an administrative search of the defendant's listed residence. (T-34). It is worth noting that the defendant had signed paperwork advising of him of his conditions of probation, including the possibility that his residence could be searched by probation and parole officers. (T-33, 34). The language contained in the conditions of probation

that the defendant signed included the language, "You're subject to arrest and to a search of your living quarters, person or vehicle without a warrant at any time by a probation/parole officer." (T-36). Officer Cerminaro determined that an administrative search of the defendant's residence was appropriate based on the facts surrounding the defendant's arrest; given the defendant's actions, Officer Cerminaro felt is possible that the defendant had additional contraband at his residence. (T-35, 37). Officer Cerminaro sought permission to conduct the search from his supervisor; as his supervisor was unavailable, permission was granted by a senior probation officer. (T-37).

After receiving permission from a senior probation officer, Officer Cerminaro responded to the defendant's listed address at 201 North Poplar Street, Apartment C1 at approximately 2 a.m. (T-38, 39). In addition to Apartment C1 being the defendant's listed address by Probation and Parole, the defendant was present at the apartment two days prior to his arrest pursuant to a probation curfew check. (T-38, 43). Upon arrival at the residence, Officer Cerminaro contacted Cashayla Hale. (T-40). Ms. Hale verified that the defendant lived at the apartment; she further advised that the last time the defendant was at the residence was approximately 10:00 p.m. the evening prior to his arrest. (T-40, 41).

Due to information given by Ms. Hale, Officer Cerminaro searched a bedroom in residence that was identified as belonging to the defendant. (T-40). Upon entering the bedroom, Officer Cerminaro noticed adult male clothing as well as adult male shoes (T-40, 41). Officer Cerminaro responded to the closet in the bedroom and noticed an extra large green jacket. (T-41). In the jacket pocket, Officer Cerminaro located two baggies of what later was determined to be crack cocaine. (T-41). The cocaine had a preliminary weight of 28 grams. (T-42). The

Officer also searched a shoe box found in the bottom of the closet and located the defendant's photo identification as well as a piece of mail addressed to the defendant. (T-41).

## IV. LEGAL ARGUMENT.

### A. Police had reasonable articulable suspicion to stop the defendant.

The defendant's *Motion to Suppress* should be denied as the police Officers had reasonable articulable suspicion to stop the defendant. Officer Rinehart stopped the defendant after he saw him riding at night without a headlight, a violation of the *Delaware Motor Vehicle Code*.

The Fourth Amendment allows police to "conduct a brief, investigatory stop when the officer has reasonable articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Delaware law states, "(a) Every bicycle when in use at nighttime shall be equipped with a lamp on the front which shall emit a white light visible from a distance of at least 500 feet to the front." 21 *Del. C.* § 4198F(a).

In this instance, Officers Rinehart, Steele, and Murphy all saw a violation of the *Delaware Motor Vehicle Code* being committed by the defendant. Due to the violation, the Officers attempted to stop the defendant. Clearly, the Officers had not only reasonable articulable suspicion to belief that the defendant was engaged in criminal activity, but probable cause to stop the defendant.

The defendant continued to flee from the officers despite their efforts. This created the second offense of Resisting Arrest. Under the *Delaware Criminal Code*, a person is guilty of resisting arrest when the person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention of the person or another person or intentionally flees from a peace

officer who is effecting an arrest. 11 *Del C.* § 1257(b). By the time the officers took the defendant into custody, they had probable cause to arrest the defendant for two separate violations of the law.

### B. The Administrative Search by a Probation Officer was justified.

The subsequent search of the defendant's home was pursuant to a valid administrative search conducted by probation officers. Generally, a warrant is required to conduct the search an individual's home; however, when a probationer is involved, the probationer's "reasonable expectation of privacy is decreased and the government's reasonable need to monitor behavior is increased." *United States v. Knights*, 534 U.S. 112, 119 (2001); *see also Griffin v. Wisconsin*, 483 U.S. 868, 871-72 (1987). A State's operation of a probation system...presents a 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable cause requirements. *United States v. Cottman*, 497 F.Supp 2d 598, 603 (D. Del. 2007) *citing Griffin*, 483 U.S. at 872.

As a result, "no more than reasonable suspicion" is required to justify a search in these circumstances. *Knights*, 534 U.S. at 521. To decide whether "reasonable suspicion exists, we consider the totality of circumstances to determine whether the "officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Williams*, 417 F.3d 373, 376 (2005); *citing United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotations omitted).

In this case, there is no doubt that the defendant was in violation of his probation and was engaged in criminal activity. The defendant is a Level III probationer; his presence on a street at 1:40 a.m. is itself a violation of his probationary terms. (T-31). He was riding his bicycle on the street without the required headlight (T-26) and resisted the stop by the police officers (T-20, 21), also violations of the defendant's terms and conditions of probation. In addition to resisting the

lawful stop by the Officers, the defendant gave the Officers a false identity. Furthermore, the defendant was carrying contraband, a firearm, when arrested and an additional bullet was found in his front pocket. The defendant also indicated that he no longer lived at the 201 North Poplar Street, Apartment C-1 despite the fact that the Probation Department had the apartment as his listed address and he was found at the location two days before his arrest. (T-46).

Clearly, the defendant was in violation of his probation and in violation of several sections of the Delaware Criminal and Motor Vehicle Codes; his conduct with the Police Officers gave the Probation Officer reason to suspect legal wrongdoing. Furthermore, his conduct indicated an effort to avoid giving the Officers his true identity and his address. This conduct gave officers a reasonable suspicion that the defendant was attempting to keep probation officers away from his residence and the contraband located within.

### C. The Defendant has failed to meet his burden required for dismissal.

In his *Motion to Dismiss Indictment*, the defendant argues that the indictment against him should be dismissed because the officers failed to preserve exculpatory evidence. The defendant claims that by failing to seize the defendant's bicycle, the police violated his due process rights. The Court requires a defendant demonstrate "bad faith" by police officers in order to grant such a motion. The defendant has failed to demonstrate that any exculpatory evidence was not preserved by police. The defendant has also failed to demonstrate any "bad faith" on the part of officers involved in the defendant's arrest.

### 1. The defendant's bicycle had no exculpatory value.

In *California v. Trombetta*, the United States Supreme Court held that the government violates a defendant's due process rights when it fails to preserve evidence that would likely play a significant role in his defense. *Trombetta*, 467 U.S. 479, 489 (1984). The Court determined

9

that to meet the standard required that "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.*

In the case at bar, the defendant cannot meet such a burden. There is no apparent exculpatory value to the evidence. Black's Law Dictionary defines "exculpatory" as, "Clearing or tending to clear from alleged fault or guilt." *Black's* 508 (8th ed. 2004). The bicycle does not exculpate the defendant from any indicted crime. The bicycle has no evidentiary value when addressing the indicted charges of "Possession of a firearm by a prohibited person" or "Possession with intent to deliver cocaine base."

### 2. There was no "bad faith" by the Police Officers.

The Supreme Court, in *Arizona v. Youngblood*, clarified the test established in *Trombetta*. In *Youngblood*, the Court determined that a defendant must show bad faith on the part of the police who failed to preserve the potentially useful evidence. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Mere negligence on the part of the police, without any showing of bad faith, does not support a due process violation. *Id.* The Third Circuit followed this reasoning writing, "...in order to make out a due process claim arising out of the loss or destruction of evidence, the defendant must prove that the government destroyed or failed to preserve the evidence in bad faith." *United States v. Gonzales*, 1995 WL 785097 at 1 (D. Del. 1995). The Court continued, "The presence or absence of bad faith turns on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. *Id.*

Even if the Court were to assume that the evidence met the requirements of *Trombetta*, the police did not act in bad faith. First, the police's knowledge at the time was that the bicycle did not have a light on it. (T-26, 28). There was no reason for the Officers to believe the bicycle

would "clear or tend to clear" the defendant from guilt. Furthermore, the Officers attempted to retrieve the bicycle from the scene of the incident later in the evening.

### 3. The evidence was not lost or destroyed by Police Officers.

Finally, the Government submits that perhaps *Trombetta* and its progeny do not even apply to this situation. The cases relating to lost or missing evidence all dealt with evidence that was lost or destroyed by government entities. In this case, the Police Officers never took custody of the bicycle and did not lose any evidence.

In *Trombetta*, the Court dealt with a police officer's failure to preserve the defendant's breath sample used in an intoxilyzer test. *Trombetta*, 467 U.S. at 479. It is also worth noting that the Court, in *Trombetta*, wrote that evidence must, "possess an exculpatory value ...before it was destroyed." *Trombetta*, 467 U.S. at 489. Clearly, Officers did not destroy any evidence related to this case

In *Youngblood,* Police failed to refrigerate a rape victim's clothing and semen samples taken from the victim. *Youngblood*, 488 U.S. at 59. In *United States v. Deaner*, the Third Circuit ruled that the police did not act in bad faith in destroying marijuana prior to the defendant's sentencing. *Deaner*, 1 F.3d 192 (3d Cir. 1993). In *Gonzales*, the Third Circuit determined that there was no bad faith by officers when wire cutters that were taken as evidence were lost. The wire cutters were subjected to tests by the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The cutters were then used in a State Court trial. The wire cutters were lost sometime after the State trial, but prior to any action within the Federal Court. *Gonzales*, 1995 WL 785097 at 1.

In *Trombetta* the police did not retain a scientific sample. In *Youngblood*, the officers failed to refrigerate clothing and fluid samples. In *Deaner*, the prosecution destroyed the

11

evidence. In *Gonzales*, the Officers gathered evidence, but the gathered evidence was subsequently lost. In the case at bar, the officers did not do anything with the bike; it was never in their custody. Simply put, *Trombetta*, and its related cases, do not apply to the factual scenario before the Court; in this case, the Police Officers did not lose any evidence.

### V. CONCLUSION.

The Government respectfully submits that the defendant's motions should be denied. In relation to the Defendant's *Motion to Suppress Physical Evidence and Statements*, the Police had more than reasonable, articulable suspicion to stop the defendant.

Regarding the *Motion to Dismiss Indictment*, there are several reasons the motion should be denied. First, the uncollected bicycle is not exculpatory as to either "Possession with intent to deliver cocaine" or "Possession of a firearm by a prohibited person." Secondly, the defendant cannot show "bad faith" on the part of the officers in failing to take the bicycle as evidence. Finally, the Government submits that the cases cited by the defendant do not support his position as the police never had the evidence in their custody and they did not do destroy or lose an evidence.

WHEREFORE, the United States respectfully asks the Court to deny each of Charles Warren's motions.

                                              Respectfully submitted,

                                              COLM F. CONNOLLY
                                              United States Attorney

                                 BY:  /s/ Shawn E. Martyniak
                                              Shawn E. Martyniak
                                              Special Assistant United States Attorney
                                              Nemours Building, Suite 700
                                              1007 Orange Street
                                              P.O. Box 2046
                                              Wilmington, DE 19899-2046
                                              302-573-6277, x170

Dated: March 7, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 07-143-JJF |
| | ) | |
| CHARLES WARREN, | ) | |
| Defendant. | ) | |

## ORDER

For the reasons stated in the Government's Motion dated March 6, 2008, **IT IS HEREBY ORDERED** that:

1. The defendant's *Motion to Suppress Physical Evidence and Statements* is **DENIED**.
2. The defendant's *Motion to Dismiss Indictment* is **DENIED**.

Dated: _____        _____
                                                                        Joseph J. Farnan
                                                                        UNITED STATES DISTRICT JUDGE