IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,      :
                               :
          Plaintiff,           :
                               :
     v.                        :   Criminal Action No. 07-143-JJF
                               :
CHARLES WARREN,                :
                               :
          Defendant.           :
                               :

Colm F. Connolly, United States Attorney, and Shawn Martyniak,
Esquire, Assistant United States Attorney, of the OFFICE OF THE
UNITED STATES ATTORNEY, Wilmington, Delaware.

Attorney for Plaintiff.

Eleni Kousoulis, Esquire, Assistant Federal Public Defender, of
the FEDERAL PUBLIC DEFENDER'S OFFICE, Wilmington, Delaware.

Attorney for Defendant.

**MEMORANDUM OPINION**

May  9 , 2008
Wilmington, Delaware

**Farnan,** District Judge.

Pending before the Court are a Motion To Suppress Physical Evidence (D.I. 13) and Motion to Dismiss Indictment (D.I. 14) filed by Defendant, Charles Warren.  For the reasons discussed, the Court will deny both motions.

## I.    BACKGROUND

On November 6, 2007, Defendant, Charles Warren, was indicted on one count of knowingly possessing with the intent to distribute more than five grams of a mixture containing cocaine base, in violation of 21 U.S.C. § 841 (a)(1) and (b)(1)(B), and on one count of being a felon in possession of a loaded firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 942(a)(2).  On December 17, 2007, Mr. Warren filed the instant Motion to Suppress Physical Evidence, contending that the October 11, 2007 traffic stop of him while on his bicycle was illegal.  As a result, Mr. Warren requests the Court to suppress all physical evidence seized from his person and from the subsequent search of his alleged residence.  On December 17, 2007, Mr. Warren also filed the instant Motion to Dismiss Indictment, contending that the Government's failure to preserve essential evidence, namely Mr. Warren's bicycle, warrants dismissal of the Indictment.  The Court conducted an evidentiary hearing on February 6, 2008.

By his Motion to Suppress, Mr. Warren contends that the police lacked reasonable suspicion or probable cause to conduct

2

the October 11, 2007 traffic stop.  By his Motion to Dismiss, Mr.
Warren contends that the police deliberately failed to preserve
evidence essential to his defense.

## II.  FINDINGS OF FACT

1.   On October 11, 2007, Officer Steele and his partner
Officer Murphy, both Wilmington police officers, were working the
midnight shift when they received a radio call from Officer
Rinehart at approximately 1:38 a.m., regarding a fleeing suspect.
(D.I. 18 ("Tr.") at 4-6.)  At that time, Officers Steele and
Murphy headed towards the 2800 block of Northeast Boulevard,
Wilmington, Delaware.  (Tr. 8.)

2.   Upon arrival at the intersection of 28th Street and
Claymont Street, one block from 2800 Northeast Boulevard, Officer
Steele observed Mr. Warren traveling by bicycle southbound in the
northbound lane.  (Tr. 7.)  Officers Steele and Murphy both
noticed that Mr. Warren was riding his bicycle at night without a
headlight, in violation of the Delaware Motor Vehicle Code.  (Tr.
8, 18, 26, 28.)

3.   Officer Steele repeatedly ordered Mr. Warren to stop,
but he continued to flee southbound.  (Tr. 8, 9.)  The officers
pursued Mr. Warren to the area of 27th Street and Northeast
Boulevard, where he dropped his bicycle and fled on foot.  (Tr.
8.)  Officers Steele and Murphy exited their vehicle and chased
Mr. Warren on foot.  (Tr. 9.)

3

4.    Officer Murphy caught up to and tackled Mr. Warren, who rolled to his back and reached towards his waist-band.  (Tr. 10.) Officer Steele then tasered Mr. Warren for two five-second cycles and dry-stunned him for one cycle, before taking Mr. Warren into custody.  (Tr. 10, 11.)

5.    The officers conducted a pat-down of Mr. Warren and discovered a .38 caliber Rossi Inter-Arms handgun and a single .38 special round in Mr. Warren's pocket.  (Tr. 11.)

6.    Mr. Warren initially gave his identity as "John Wisc," before revealing his true name at the hospital.  (Tr. 12.)

7.    The officers took Mr. Warren to Wilmington Hospital as a precautionary measure, because he had been tasered.  (Tr. 12, 13.)  After he was released from Wilmington Hospital, Mr. Warren was taken to the Wilmington Police Department for booking.  (Tr. 13.)

8.    Before transporting Mr. Warren to the hospital, none of the officers on the scene attempted to secure Mr. Warren's bicycle.  (Tr. 13, 24.)  The policy of the Wilmington Police Department is to preserve the personal property of individuals who are arrested.  (Tr. 24.)  After Mr. Warren had been taken from the hospital to the police station, the officers returned to the scene and were unable to locate Mr. Warren's bicycle.  (Tr. 14, 29.)

9.    Officer Rinehart discovered through searching the

4

State's computer information system that Mr. Warren was assigned to Level III probation, and contacted Officer Cerminaro of Probation and Parole. (Tr. 14, 30.) Officer Cerminaro, who was informed of the circumstances of Mr. Warren's arrest, determined that Mr. Warren was in violation of the terms of his probationary status and decided to conduct an administrative search of Mr. Warren's residence. (Tr. 33, 34.) One condition of Mr. Warren's probation permits a probation officer to search his living quarters without a warrant. (Tr. 36.) Given the circumstances of Mr. Warren's arrest, Officer Cerminaro thought it possible that Mr. Warren had contraband at his residence. (Tr. 35, 37.)

10. After receiving permission from a senior probation officer, Officer Cerminaro responded to Mr. Warren's listed address at 201 North Poplar Street, Apartment C1 at approximately 2 a.m.. (Tr. 38-39.) Mr. Warren had been present at this address two days prior to his arrest during a probation curfew check. (Tr. 38, 43.) A female tenant, Ms. Hale, verified that Mr. Warren lived at the apartment and identified Mr. Warren's bedroom. (Tr. 40.)

11. In the bedroom identified as Mr. Warren's, Officer Cerminaro found adult male clothing, adult male shoes, and a shoe box that contained a photo identification of Mr. Warren and piece of mail addressed to Mr. Warren. (Tr. 40-41.) Officer Cerminaro also found a green jacket, the pockets of which

5

contained two bags of what was later determined to be

approximately 28 grams of crack cocaine.    (Tr. 41, 42.)

## III. CONCLUSIONS OF LAW

    A.    <u>Whether Mr. Warren Is Entitled to Have the Indictment Dismissed</u>

    12.  The Due Process Clause of the Fourteenth Amendment requires the State to disclose to criminal defendants favorable evidence that is material either to guilt or to punishment. <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).

    13.  Similarly, the Government must preserve potentially exculpatory evidence where that evidence is suspected to play a significant role in the suspect's defense. <u>California v. Trombetta</u>, 467 U.S. 479, 488 (1984). "To meet this standard of constitutional materiality, ... evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." <u>Id.</u>, at 489 (citing <u>United States v. Agurs</u>, 427 U.S. 97, 109-10 (1976)).

    14.  The Supreme Court has further defined the contours of the Government's duty to preserve evidence, holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988)("[t]he failure of the police

6

to refrigerate the clothing and to perform tests on the semen samples can at worst be described as negligent," and absent bad faith, finding no constitutional violation).

15.   Mr. Warren contends that his bicycle was in full compliance with the Delaware Motor Vehicle Code, and that the officers' failure to preserve the bicycle deprived him of the ability to prove his defense.  Moreover, Mr. Warren contends that the officers' failure to preserve the bicycle was deliberate and in bad faith.

16.   After reviewing the parties' contentions and the evidence, the Court concludes that Mr. Warren has not suffered a due process violation through the officers' failing to preserve the bicycle evidence.  In reaching this conclusion, the Court notes that Mr. Warren has presented no evidence showing that the bicycle had apparent exculpatory value.  Further, the Court credits the testimony of Officers Steele and Murphy, both of whom testified that the bike had no headlamp or lighting device.

17.   In addition, the Court notes that Mr. Warren has presented no evidence of bad faith by the police officers.  That the officers did not immediately return to retrieve the bicycle, after chasing Mr. Warren on foot, physically subduing him, and discovering a firearm on his person, does not support an inference of bad faith.  Nor does the fact the officers returned to scene to retrieve the bicycle after Mr. Warren had been

7

examined at the hospital and transported to the police
department.  Like the conduct of the officers in <u>Youngblood</u>, the
failure of the officers to immediately retrieve Mr. Warren's
bicycle can at most be described as negligent.

18.  Absent a showing that the bicycle had apparent
exculpatory value and of bad faith by the officers, Mr. Warren
cannot establish a due process violation for failure to preserve
evidence.   Accordingly, the Court will deny Mr. Warren's Motion
to Dismiss Indictment.

B.  <u>Whether Mr. Warren Is Entitled To The Suppression Of
Physical Evidence</u>

19.  The Fourth Amendment to the United States Constitution
protects "the right of the people to be secure against
unreasonable searches and seizures. . . ."  U.S. Const, amend IV.

20.  A defendant who files a motion to suppress ordinarily
carries the burden of proof.  <u>Rakas v. Illinois</u>, 439 U.S. 128,
130 n. 1 (1978).  However, where a search is conducted without a
warrant, as is the case here, the burden shifts to the Government
to demonstrate by a preponderance of the evidence that the search
was conducted pursuant to one of the exceptions to the warrant
requirement.  <u>See</u> <u>United States v. Herrold</u>, 962 F.2d 1131, 1137
(3d Cir. 1992).  Evidence obtained pursuant to a warrantless
search that does not meet an exception to the warrant requirement
must be suppressed as "fruit of the poisonous tree."  <u>United</u>

8

States v. Brown, 448 F.3d 239, 244 (2006) (citing Wong Sun v. United States, 371 U.S. 471, 487-88 (1963)).

21.  Police are vested with the constitutional authority to conduct a limited, warrantless, investigatory stop in a public place if an officer has a reasonable suspicion of criminal activity.  Terry v. Ohio, 392 U.S. 1, 88 (1968).  During a traffic stop, the temporary detention of individuals constitutes a "seizure" within the meaning of the Fourth Amendment.  Whren v. United States, 517 U.S. 806, 809 (1996).

22.  Reasonable suspicion requires that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981).  While Fourth Amendment jurisprudence demands particularized suspicion, courts also recognize that officers must be allowed "to draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."  United States v. Arvizu, 534 U.S. 266, 273 (2002).  Reasonable suspicion is to be viewed from the vantage point of a "reasonable, trained officer standing in [the detaining officer's] shoes."  Johnson v. Campbell, 332 F.3d 199, 206 (3d Cir. 2003).  Whether the police have reasonable suspicion is determined from the totality of the circumstances.  Cortez, 449 U.S. at 417.  In evaluating whether a

9

particular search was reasonable, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" <u>Terry</u>, 392 U.S. at 21-22.

23.  Based on the totality of the circumstances in this case, the Court concludes that Officers Steele and Murray had reasonable suspicion concerning violations of the Delaware Motor Vehicle Code and the Delaware Criminal Code to stop Mr. Warren. As stated earlier, the Court credits the testimony of Officers Steele and Murray, both of whom testified to observing Mr. Warren operate his bicycle without a headlight, in violation of Del. Code Ann. tit. 21, §4198F(a) ("Every bicycle when in use at nighttime shall be equipped with a lamp on the front which shall emit a white light visible from a distance of at least 500 feet to the front"). "It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations." <u>United States v. Moorefield</u>, 111 F.3d 10, 12 (3d Cir. 1997). Given the credible testimony of these two officers, it is immaterial that Officer Rinehart, the officer who first observed Mr. Warren riding his bicycle without a light, did not testify at the evidentiary hearing.

24.  In addition to Mr. Warren's operation of his bicycle at

10

night without proper lighting, which alone provided a reasonable, articulable basis for the stop, Mr. Warren fled from the officers after being repeatedly told to stop.  Mr. Warren's flight gave Officers Steele and Murphy reasonable suspicion to stop him for the offense of resisting arrest, in violation of Del. Code Ann. tit. 11, § 1257(b).  <u>See</u> <u>U.S. v. Bonner</u>, 363 F.3d 213, 218 (3d Cir. 2004)("Flight from a non-consensual, legitimate traffic stop ... gives rise to reasonable suspicion.").

25.    Officers Steele and Murphy have thus identified facts under which a reasonable officer could have possessed a suspicion of two infractions: riding a bicycle without a headlight and resisting arrest.  Accordingly, the Court finds no Fourth Amendment violation and will deny Mr. Warren's Motion To Suppress Physical Evidence.

## IV.  CONCLUSION

For the reasons discussed, the Court will deny Mr. Warren's Motion To Suppress Physical Evidence and Motion to Dismiss Indictment.

An appropriate Order will be entered.

11